27703. DORMINY *v.* AMERICAN MUTUAL LIABILITY
INSURANCE COMPANY *et al.*

DECIDED NOVEMBER 25, 1939.    REHEARING DENIED DECEMBER 9, 1939.

*McDonald & McDonald,* for plaintiff.

*Neely, Marshall & Greene,* for defendants.

STEPHENS, P. J.  Edward Monroe Dorminy, by next friend, filed a claim for compensation with the Industrial Board on account of the death of his father while in the employ of Fitzgerald Cotton Mills, alleging that such death was due to an accident arising out of and in the course of the deceased's employment.  American Mutual Liability Insurance Company, the insurance carrier, and the employer denied liability, claiming that the employee had met his death as a result of heart failure or a stroke of apoplexy, and that his death did not result from an accident arising out of and in the course of his employment, which was that of night watchman and fireman for the above-named cotton mill.

The evidence adduced before the single director was as follows: On the night the employee met his death he had cleaned up preparatory to going home.  As he went through the mill and into the spooler room on his rounds he spoke to one of the employees, stating that he was about ready to go.  A moment thereafter he was noticed falling between the "box" and the "beam," which space was between twelve and fourteen inches wide.  The floor there was oily and greasy from machinery.  Dorminy was a heavy man weighing around 190 pounds, and when he fell he struck his forehead against a steel beam, which had about as sharp an edge as one's finger, cutting a gash over his right eye.  The deceased died within four or five minutes after he fell.

One witness testified that he did not know whether Dorminy slipped or not, but that he had seen other people slip on the floor at this place; that he had slipped there himself, but he had never seen

any one fall there; and that after Dorminy fell he never spoke, but died within four or five minutes. Another witness testified that Dorminy bled a cupfull or more from his wounds, which he stated were both above and below his right eye. This witness stated that he had fallen on the floor himself, and that it was necessary for one walking through at this place to watch where he was walking. Another witness testified that she noticed the deceased just before he fell as he passed where she was working; that he looked pale, like he was going to faint; that she glanced back and saw him fall; that he staggered like a drunk man and twisted around as he fell. This witness testified that he had a "terrible bruise just about the eyebrow on the edge of his temple." She further testified that after he fell he had "color, red as a beet," and perspired profusely. She also stated that the deceased was apparently washed up and looked like he always did, kind of pale. Another witness testified that he saw the deceased about a minute and a half before he fell and that he did not look unusually pale. The evidence showed that a physician was summoned, and that he came in about an hour. This physician signed the death certificate stating the cause of death as a heart attack or possible apoplexy, but he testified that he made no examination, just looked at the deceased. He testified that he had been around the deceased "quite a bit," and had never known of his having had heart trouble; that he could not say definitely what caused his death; that it was possible that he could have received a lick on one side of his head and that it caused concussion on the other side of his head.

The single director found that the deceased met his death as the result of an accident arising out of and in the course of his employment, and awarded compensation to the claimant. From this award the employer and the insurance carrier appealed to the full board, which affirmed the single director. The employer and the insurance carrier appealed to the superior court. That court sustained the appeal and reversed the board, holding that the claimant had relied wholly on circumstantial evidence, and that before he would be authorized to have a finding in his favor he must adduce testimony such as to reasonably establish the theory relied upon, and to preponderate to that theory rather than to any other reasonable hypothesis; that the evidence did not meet this test, and did not authorize the award for the claimant. To this judgment the claimant excepted.

.The judge of the superior court, on appeal, has not that discretion to set aside an order or decree of the Industrial Board which he has in passing on motions for new trials and petitions for certiorari, in cases where the evidence would authorize a finding or judgment for either party. *U. S. Fidelity &c. Co.* v. *Hall,* 34 *Ga. App.* 307 (4) (129 S. E. 305). On appeal from an award of the Industrial Board the judge of the superior court is without authority to set aside an award, and should affirm it, where it is sustained by some legally competent evidence, unless some error of law appears. *Maryland Casualty Co.* v. *England,* 160 *Ga.* 810 (129 S. E. 75) ; *South* v. *Indemnity Ins. Co.,* 41 *Ga. App.* 827 (155 S. E. 48).

It is true that the burden is on the claimant to prove that the death of the employee, for which he seeks compensation, was caused or accelerated by the accident, and that the accident was the proximate cause of the death. The burden of proof is on the claimant to show that the death of the employee arose "naturally and unavoidably from accident." *Blanchard* v. *Savannah River Lumber Co.,* 40 *Ga. App.* 416 (149 S. E. 793) ; *Fulton Bag & Cotton Mills* v. *Haynie,* 43 *Ga. App.* 579 (159 S. E. 781) ; *Savannah River Lumber Co.* v. *Bush,* 37 *Ga. App.* 539 (140 S. E. 899) ; *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682, 691 (118 S. E. 786). However, where, in the course of and arising out of his employment, an employee, who is in good health and of strong physique, sustains an injury immediately followed by death, an inference is authorized that the injury was the cause of the death, in the absence of other than conjectural testimony to the contrary. 71 C. J. 1061. Where the proved facts raise a natural and reasonable presumption that the death resulted from an accident, the burden then is upon the employer, denying that fact, to' show that the death did not so occur.

Applying these principles to the facts of this case, it is our opinion that the finding of fact of the single director, as approved by the full board, that the deceased employee met his death because of an accidental injury sustained by him arising out of and in the course of his employment, was supported by the evidence. The evidence authorized a finding that the deceased, a heavy man weighing around 190 pounds and of apparently previously sound health, slipped on an oily and greasy place in the floor of the mill

of his employer, in the narrow way between a spool box and a sharp steel beam, violently striking his forehead and temple against such steel beam, inflicting a severe blow and cut, and that this produced death. The evidence adduced by the employer and the insurance carrier to the effect that the employee looked pale just before he fell, looked like he·was going to faint, staggered like a drunk man when he fell, and looked red and perspired profusely after he fell, and the medical testimony of the doctor who signed the death certificate and who came upon the scene an hour after the death, that he did not examine the deceased but just looked at him, that the cause of the death was heart failure or possibly apoplexy, were conjectural, and did not demand a finding contrary to that of this director. The judge of the superior court erred in sustaining the appeal of the insurance carrier and the employer, and in reversing the finding of the Industrial Board.

*Judgment reversed. Sutton and Felton, JJ., concur.*